CASE NO. 3:15-cv-00235-K

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

MONITRONICS INTERNATIONAL, INC.

      Plaintiff,

v.                                                          <u>**DEMAND FOR JURY TRIAL**</u>

ALARM PROTECTION TEXAS, LLC,
ALARM PROTECTION ALABAMA, LLC,
ALARM PROTECTION ALASKA, LLC,
ALARM PROTECTION ARIZONA, LLC,
ALARM PROTECTION ARKANSAS, LLC
ALARM PROTECTION CALIFORNIA, LLC,
ALARM PROTECTION COLORADO, LLC,
ALARM PROTECTION FLORIDA, LLC,
ALARM PROTECTION GEORGIA, LLC,
ALARM PROTECITON KANSAS, LLC,
ALARM PROTECTION KENTUCKY, LLC,
ALARM PROTECTION MISSISSIPPI, LLC,
ALARM PROTECTION OKLAHOMA, LLC
ALARM PROTECTION TENNESSEE, LLC,
ALARM PROTECTION UTAH, LLC,
ALARM PROTECTION USA, LLC,
ALARM PROTECTION MANAGEMENT, LLC
ALARM PROTECTION, LLC,
RHODESIAN PROTECTION, LLC,
ADAM D. SCHANZ, individually, and
JACOB DAHL, individually.

      Defendants.

<u>**FIRST AMENDED COMPLAINT**</u>

Plaintiff, Monitronics International, Inc., LP (referred to as "Monitronics" and "Plaintiff"),

through its undersigned counsel, brings this action for injunctive relief and damages against

Defendants, Alarm Protection Texas, LLC ("AP Texas"), Alarm Protection Alabama, LLC ("AP

Alabama"), Alarm Protection Alaska, LLC ("AP Alaska"), Alarm Protection Arizona, LLC ("AP Arizona"), Alarm Protection Arkansas, LLC ("AP Arkansas"), Alarm Protection California, LLC ("AP California"), Alarm Protection Colorado, LLC ("AP Colorado"), Alarm Protection Florida, LLC ("AP Florida"), Alarm Protection Georgia, LLC ("AP Georgia"), Alarm Protection Kansas, LLC ("AP Kansas"), Alarm Protection Kentucky, LLC ("AP Kentucky"), Alarm Protection Mississippi, LLC ("AP Mississippi"), Alarm Protection Oklahoma, LLC ("AP Oklahoma"), Alarm Protection Tennessee, LLC ("AP Tennessee"), Alarm Protection Utah, LLC ("AP Utah"), Alarm Protection USA, LLC ("AP USA"), Alarm Protection Management, LLC ("AP Management"), Alarm Protection, LLC ("AP LLC"), Rhodesian Protection, LLC ("Rhodesian"), (sometimes collectively referred to as "AP Defendants"), Adam D. Schanz ("Schanz"), and Jacob Dahl ("Dahl"), (together with the AP Defendants collectively referred to as "Defendants"), and in support alleges:

## SUMMARY OF THE CASE

1.       This is an action complaining of Defendants' fraudulent and deceptive acts practiced upon Plaintiff's security alarm monitoring customers.  The thrust of Defendants' scheme is to train its sales staff on how to trick Monitronics customers into changing their alarm monitoring service provider by misleading customers into believing that "Alarm Protection" ("AP") is the same as or a successor of Monitronics.  Defendants' scheme is carried out in a variety of ways, largely preying on the elderly or uneducated through door-to-door sales solicitations.   AP sales representatives misrepresent an affiliation with Monitronics in order to gain entrance into the home in the following ways: 1) falsely representing that the sales representative is "with" or working on behalf of their existing security monitoring company to fix or upgrade existing equipment; or 2) by falsely representing that they are taking over for Monitronics because it has gone out of business, left the market, or lost its license, among others.  After fraudulently gaining access to the home, the sales

representative then purports to offer various incentives claimed to be free of charge but which, in fact, carry with it a five-year contractual commitment with 5-year term automatic renewals.  The final phase of the scheme is to replace existing alarm monitoring equipment with a system linked to AP the same day the deception is employed, and to talk around the paperwork signed during the whirlwind sales pitch and installation so that the customer often does not realize he or she has changed service providers until after the three-day right of rescission period has passed.  In paragraphs 53 through 91 of this First Amended Complaint, Monitronics has provided summaries of 35 reported instances of customers who have fallen prey to such deceptive practices.  While this list of reported complaints is growing, it constitutes only a percentage of Monitronics customers affected by the deceptive acts at issue.  These deceptive sales practices violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A, B), as well as various state laws prohibiting interference with contracts and business relationships and/or unfair competition.

2.      By this action, Monitronics seeks injunctive relief prohibiting Defendants' use of deceptive sales tactics, as well as recovery of Monitronics' direct and consequential damages, including lost profits or Defendants' revenues and/or profits and other appropriate ancillary relief, including an accounting of all revenues and/or profits received.  Monitronics also seeks the recovery of other penal damages, common law punitive damages, and costs and attorney fees incurred in the prosecution of this lawsuit.

## PARTIES AND SERVICE

3.      Monitronics International is a Texas Corporation with its principal place of business in Dallas, Dallas County, Texas.

4.      Defendant Alarm Protection Texas, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah

84054.  On information and belief, Defendant Schanz owns and/or controls, in whole or in part, AP Texas.  AP Texas holds an active Texas alarm license, number B18554.  Its public filings represent that it has over 167 "employees" that hold individual Texas alarm licenses, although many of the sales representatives engaged in the deceptive sales practices are doing so without the required Texas licenses.  Pursuant to FRCP 4(e), AP Texas can be and has been served with process by serving its registered agent for service of process in the State of Texas, Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin Texas 78701.

5.      Defendant Alarm Protection Alabama, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Alabama is in the business of monitoring residential and commercial security alarm systems in Alabama.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Alabama the "Alarm Protection" name and trademarks, direct and control AP Alabama's sales and marketing practices in Alabama, and are in active concert with AP Alabama with respect to the deceptive sales and marketing of AP's goods and services in Alabama, all as more particularly alleged below.  AP Alabama does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Alabama knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as more particularly alleged below.  Accordingly, pursuant to Texas Civil Practices & Remedies Code

("CPRC"), section 17.044 and FRCP 4(e), AP Alabama can be and has been served with process by serving the Texas Secretary of State.  Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Alabama at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Alabama has appeared in this case, and therefore additional summons and service is unnecessary at this time.

6.      Defendant Alarm Protection Alaska, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Alaska is in the business of monitoring residential and commercial security alarm systems in Alaska.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Alaska the "Alarm Protection" name and trademarks, direct and control AP Alaska's sales and marketing practices in Alaska, and are in active concert with AP Alaska with respect to the deceptive sales and marketing of AP's goods and services in Alaska, all as alleged  more particularly below.  AP Alaska does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Alaska knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Alaska can be and has been served with process by serving the Texas Secretary of State.  Pursuant to section 17.045 of the

CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Alaska at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054. By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Alaska has appeared in this case, and therefore additional summons and service is unnecessary at this time.

7.     Defendant Alarm Protection Arkansas, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054. AP Arkansas is in the business of monitoring residential and commercial security alarm systems in Arkansas. On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Arkansas the "Alarm Protection" name and trademarks, direct and control AP Arkansas's sales and marketing practices in Arkansas, and are in active concert with AP Arkansas with respect to the deceptive sales and marketing of AP's goods and services in Arkansas, all as more particularly alleged below. AP Arkansas does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below. AP Arkansas knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below. Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Arkansas can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Arkansas at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake

City, Utah, 84054. By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Arkansas has appeared in this case, and therefore additional summons and service is unnecessary at this time.

8.     Defendant Alarm Protection Arizona, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054. AP Arizona is in the business of monitoring residential and commercial security alarm systems in Arizona. On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Arizona the "Alarm Protection" name and trademarks, direct and control AP Arizona's sales and marketing practices in Arizona, and are in active concert with AP Arizona with respect to the deceptive sales and marketing of AP's goods and services in Arizona, all as more particularly alleged below. AP Arizona does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below. AP Arizona knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below. Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Arizona can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Arizona at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054. By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Arizona has appeared in this case, and therefore additional summons and service is unnecessary at

this time.

9.      Defendant Alarm Protection California, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP California is in the business of monitoring residential and commercial security alarm systems in California.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP California the "Alarm Protection" name and trademarks, direct and control AP California's sales and marketing practices in California, and are in active concert with AP California with respect to the deceptive sales and marketing of AP's goods and services in California, all as more particularly alleged below.  AP California does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP California knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below.  Accordingly, pursuant to CPRC, section 17.044and FRCP 4(e), AP California can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP California at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP California has appeared in this case, and therefore additional summons and service is unnecessary at this time.

10.     Defendant Alarm Protection Colorado, LLC is a Utah Limited Liability Company with its

principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Colorado is in the business of monitoring residential and commercial security alarm systems in Colorado.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Colorado the "Alarm Protection" name and trademarks, direct and control AP Colorado's sales and marketing practices in Colorado, and are in active concert with AP Colorado with respect to the deceptive sales and marketing of AP's goods and services in Colorado, all as more particularly alleged below.  AP Colorado does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Colorado knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Colorado can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Colorado at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Colorado has appeared in this case, and therefore additional summons and service is unnecessary at this time.

11.     Defendant Alarm Protection Florida, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Florida is in the business of monitoring residential and commercial security alarm

systems in Florida.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Florida the "Alarm Protection" name and trademarks, direct and control AP Florida's sales and marketing practices in Florida, and are in active concert with AP Florida with respect to the deceptive sales and marketing of AP's goods and services in Florida, all as more particularly alleged below.  AP Florida does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Florida knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below. Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Florida can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Florida at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054. By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Florida has appeared in this case, and therefore additional summons and service is unnecessary at this time.

12.     Defendant Alarm Protection Georgia, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Georgia is in the business of monitoring residential and commercial security alarm systems in Georgia.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Georgia the "Alarm Protection" name

and trademarks, direct and control AP Georgia's sales and marketing practices in Georgia, and are in active concert with AP Georgia with respect to the deceptive sales and marketing of AP's goods and services in Georgia, all as more particularly alleged below.  AP Georgia does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Georgia knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Georgia can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Georgia at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Georgia has appeared in this case, and therefore additional summons and service is unnecessary at this time.

13.    Defendant Alarm Protection Kansas, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Kansas is in the business of monitoring residential and commercial security alarm systems in Kansas.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Kansas the "Alarm Protection" name and trademarks, direct and control AP Kansas' sales and marketing practices in Kansas, and are in active concert with AP Kansas with respect to the deceptive sales and marketing of AP's goods and

services in Kansas, all as more particularly alleged below.  AP Kansas does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Kansas knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below. Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Kansas can be and has been served with process by serving the Texas Secretary of State.  Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Kansas at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Kansas has appeared in this case, and therefore additional summons and service is unnecessary at this time.

14.     Defendant Alarm Protection Kentucky, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Kentucky is in the business of monitoring residential and commercial security alarm systems in Kentucky.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Kentucky the "Alarm Protection" name and trademarks, direct and control AP Kentucky's sales and marketing practices in Kentucky, and are in active concert with AP Kentucky with respect to the deceptive sales and marketing of AP's goods and services in Kentucky, all as more particularly alleged below.  AP Kentucky does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas,

but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Kentucky knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Kentucky can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Kentucky at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Kentucky has appeared in this case, and therefore additional summons and service is unnecessary at this time.

15.     Defendant Alarm Protection Mississippi, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Mississippi is in the business of monitoring residential and commercial security alarm systems in Mississippi.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Mississippi the "Alarm Protection" name and trademarks, direct and control AP Mississippi's sales and marketing practices in Mississippi, and are in active concert with AP Mississippi with respect to the deceptive sales and marketing of AP's goods and services in Mississippi, all as more particularly alleged below.  AP Mississippi does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving

the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below. AP Mississippi knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Mississippi can be and has been served with process by serving the Texas Secretary of State.  Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Mississippi at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Mississippi has appeared in this case, and therefore additional summons and service is unnecessary at this time.

16.    Defendant Alarm Protection Oklahoma, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Oklahoma is in the business of monitoring residential and commercial security alarm systems in Oklahoma.  On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Oklahoma the "Alarm Protection" name and trademarks, direct and control AP Oklahoma's sales and marketing practices in Oklahoma, and are in active concert with AP Oklahoma with respect to the deceptive sales and marketing of AP's goods and services in Oklahoma, all as more particularly alleged below.  AP Oklahoma does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Oklahoma

knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Oklahoma can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Oklahoma at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Oklahoma has appeared in this case, and therefore additional summons and service is unnecessary at this time.

17.     Defendant Alarm Protection Tennessee, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054.  AP Tennessee is in the business of monitoring residential and commercial security alarm systems in Tennessee. On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Tennessee the "Alarm Protection" name and trademarks, direct and control AP Tennessee's sales and marketing practices in Tennessee, and are in active concert with AP Tennessee with respect to the deceptive sales and marketing of AP's goods and services in Tennessee, all as more particularly alleged below.  AP Tennessee does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Tennessee knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP

4(e), AP Tennessee can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Tennessee at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054. By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Tennessee has appeared in this case, and therefore additional summons and service is unnecessary at this time.

18.      Defendant Alarm Protection Utah, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah 84054. AP Utah is in the business of monitoring residential and commercial security alarm systems in Utah. On information and belief, AP USA, AP Management, AP, LLC, Rhodesian and/or Schanz own and/or license, in whole or in part, to AP Utah the "Alarm Protection" name and trademarks, direct and control AP Utah's sales and marketing practices in Utah, and are in active concert with AP Utah with respect to the deceptive sales and marketing of AP's goods and services in Utah, all as more particularly alleged below. AP Utah does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas, by, among other things, training, orchestrating and/or conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below. AP Utah knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as alleged more particularly below. Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Utah can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Utah at its home office address located at

189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Utah has appeared in this case, and therefore additional summons and service is unnecessary at this time.

19.     Defendant Alarm Protection USA, LLC is a Utah Limited Liability Company with its principal place of business at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  On information and belief, Defendant Schanz owns and/or controls, in whole or in part,  AP USA.  AP USA does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas by, among other things, training, orchestrating, conspiring, and/or aiding and abetting a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP USA knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as more particularly described below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP USA can be and has been served with process by serving the Texas Secretary of State.  Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP USA at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP USA has appeared in this case, and therefore additional summons and service is unnecessary at this time.

20.     Defendant Alarm Protection Management, LLC is a Utah Limited Liability Company with its principal place of business at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  On information and belief, Defendant Schanz owns and/or controls, in whole or in part, AP Management.   AP Management does not maintain a regular place of business in Texas nor a

registered agent for service of process in Texas, but has engaged in business in Texas by, among other things, training, orchestrating, conspiring, and/or aiding and abetting a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP Management knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as more particularly alleged below. Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), AP Management can be and has been served with process by serving the Texas Secretary of State.  Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP Management at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP Management has appeared in this case, and therefore additional summons and service is unnecessary at this time.

21.     Defendant Alarm Protection, LLC is a Utah Limited Liability Company with its principal place of business located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  On information and belief, Defendant Schanz owns and/or controls, in whole or in part, AP LLC.  AP LLC does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas by, among other things, training, orchestrating, conspiring, and/or aiding and abetting a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  AP, LLC knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as more particularly alleged below.  Accordingly, pursuant to

CPRC, section 17.044 and FRCP 4(e), AP LLC can be and has been served with process by serving the Texas Secretary of State.  Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to AP LLC at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, AP LLC has appeared in this case, and therefore additional summons and service is unnecessary at this time.

22.     Defendant Rhodesian Protection, LLC  ("Rhodesian") is a Utah Limited Liability Company with its principal place of business at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  On information and belief, Defendant Schanz owns and/or controls, in whole or in part, Rhodesian, and Rhodesian is the manager of some or all of the other AP Defendants.  Rhodesian does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas and elsewhere, but has engaged in business in Texas by, among other things, training, orchestrating, conspiring, and/or aiding and abetting a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas, all as more particularly alleged both above and below.  Rhodesian knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as more particularly alleged below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), Rhodesian can be and has been served with process by serving the Texas Secretary of State.  Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to Rhodesian at its home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, Rhodesian has appeared in this case, and therefore additional summons and service is unnecessary at this time.

FIRST AMENDED COMPLAINT - Page 19

23.     Defendant Schanz is a resident of the State of Utah.  On information and belief, Schanz owns or controls, in whole or in part, all of the AP Defendants and Schanz and/or Rhodesian is/are the manager(s) of the AP Defendants.   On information and belief, Defendant Schanz also owns, controls, manages, and/or directs the activity of several of the state specific AP entities, including the AP Defendants, which are also carrying out the same fraudulent sales practices in multiple additional states, including Texas.  Schanz is and remains a primary individual actively involved in training AP's sales force on the effective implementation of false and deceptive sales practices as described herein.  Schanz does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas by, among other things, training, orchestrating, and conspiring with a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas, all as more particularly alleged both above and below.  Schanz knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as more particularly alleged below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), Schanz can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to Schanz at his home office address located at 189 North Hwy 89, Suite C-12, North Salt Lake City, Utah, 84054.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, Schanz has appeared in this case, and therefore additional summons and service is unnecessary at this time.

24.     Defendant Dahl is a resident of the State of Alabama.  On information and belief, Dahl serves as a Regional Sales Manager and/or Partner for AP Texas and/or the other AP Defendants.  Dahl is and remains a primary individual actively involved in training AP's sales force on the effective

implementation of false and deceptive sales practices as described herein.  Dahl does not maintain a regular place of business in Texas nor a registered agent for service of process in Texas, but has engaged in business in Texas by, among other things, training, orchestrating, conspiring, and/or aiding and abetting a large sales force to carry out a wide spread scheme involving the use of fraudulent and deceptive sales practices in connection with the acquisition of alarm monitoring contracts in Texas and elsewhere, all as more particularly alleged both above and below.  Dahl knowingly caused injury intentionally directed at and suffered by Monitronics in the state of Texas, all as more particularly alleged below.  Accordingly, pursuant to CPRC, section 17.044 and FRCP 4(e), Dahl can be and has been served with process by serving the Texas Secretary of State. Pursuant to section 17.045 of the CPRC, a duplicate copy of process has been forwarded by the Texas Secretary of State to Dahl at his home and/or home office address located at 3117 Ashby Lane, Hoover, Alabama, 35226.  By stipulations signed by Defendant's counsel in response to service of the original Complaint, Dahl has appeared in this case, and therefore additional summons and service is unnecessary at this time.

25.     Whenever reference in this Complaint is made to any act or transaction of any Defendant, such allegation shall also include the principals, officers, directors, employees, agents and representatives of that Defendant, who committed, knew of, performed, authorized, ratified, and directed such acts or transactions on behalf of that Defendant while actively engaged in the scope of their duties.

26.     At all times mentioned herein, each of the Defendants herein were and acted as the agents, servants, and employees of their Co-Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as such agents, servants, and employees and with the permission and consent of their Co-Defendants.

27.     At all times mentioned herein, each of the Defendants were alter egos of each other, as alleged more particularly below.

**JURISDICTION AND VENUE**

28.     This Court has subject matter jurisdiction over this action pursuant to section 1331 of title 28 because it presents a Federal Question under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A, B).

29.     This Court also has subject matter jurisdiction over this action pursuant to section 1332 of title 28, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00 exclusive of attorney's fees, interest, and costs.

30.     This Court has supplemental jurisdiction over the state law claims also asserted in this action pursuant to section 1367(a) of title 28.

31.     Venue lies in this District pursuant to section 1391(b) of title 28 because a substantial number of the events giving rise to the claims asserted in this Complaint occurred in this District.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**Monitronics and Its Relationship to Defendants**

32.     Monitronics provides security alarm services to various residential and business customers throughout the United States, including Texas, and is engaged in interstate commerce, including for purposes of the Lanham Act.

33.     Monitronics is the second largest residential alarm monitoring service provider in the United States, competing against AP Texas for business within the state of Texas and competing against other AP companies operating in other states, including the AP Defendants.

34.     Monitronics' name and trademarks are registered with the United States Patent and Trademark Office.

35.     Defendants are engaged in the business of selling, installing and monitoring electronic security services and related equipment in a number of states.

36.     Monitronics and the AP Defendants are direct competitors in the security alarm services market.  The companies provide substantially identical security alarm monitoring services to their respective customers.  On information and belief, the AP Defendants and their affiliated companies operate in more than 10 states, including Texas, Alabama, Alaska, Arkansas, Arizona, California, Colorado, Florida, Georgia, Kansas, Kentucky, Mississippi, Oklahoma, Tennessee, and Utah, all of which are also served by Monitronics.

**The Origins of Schanz's Deceptive Sales Practices Scheme**

37.     Schanz began working as a salesman in the alarm industry in 2004, selling in multiple states, including Nebraska, Utah, Georgia, Florida, Louisiana and the District of Columbia.

38.     In December, 2008, Schanz formed Alarm Protection Technology LLC ("APT LLC"). Schanz served as its sole member and manager.  Initially, Schanz only used the AP entity to house Schanz's interest in alarm monitoring contracts that he sold for other companies.

39.     In 2010 or 2011, Schanz began to actively sell alarm systems and monitoring services using the name Alarm Protection Technology or APT.

40.     In 2011 and 2012, Schanz created additional Alarm Protection Technology companies in multiple states, including Alabama, Alaska, Arkansas, Florida, Georgia, Louisiana, Mississippi, Tennessee, and Texas, each using the Alarm Protection Technology name followed by the particular state where incorporated.

41.     Schanz caused each of the Alarm Protection Technology companies formed in the various states to use the APT Mark.

42.     Schanz also created the www.aptsafe.com Internet Domain that incorporates the APT Mark in its address.

43.     In January 2012, Schanz formed Alarm Protection Technology Holdings LLC ("APT Holdings").  Schanz is the organizer, member and manager of APT Holdings.

44.     Also in January, 2012, Schanz assigned to APT Holdings Schanz's interest in APT LLC and all the state-specific APT companies.

45.     On information and belief, the vast majority of monies generated from the sale, installation and monitoring of alarm systems were routed through the state specific APT companies and into APT LLC's accounts.  With few exceptions, APT, LLC received and paid invoices from vendors for the operation of the various state specific APT companies.  Literally millions of dollars were funneled into and out of APT LLC's bank accounts to operate the state specific companies.

46.     On information and belief, capital needs for all the APT companies were secured from loans obtained by APT LLC or from personal loans provided by Schanz.  On information and belief, the terms for repayment of the intercompany transfers and loans from Schanz were not appropriately or fully documented.

**Dahl and Schanz Trained APT's Sales Force Employing Deceptive Sales Practices**

47.      Dahl ran APT's sales operations in South Florida, which included the training of APT's Florida sales agents.  In November, 2011, Dahl ran a training session which was recorded.  The role playing exercise depicted in the training video was designed to illustrate how the sales force could confuse prospective customers into believing that they were simply providing an upgrade of their existing service at no cost.  The purpose of this approach, and other approaches Dahl has continued to teach, was to confuse the customer into believing that APT sales representatives were affiliated with the customer's existing alarm monitoring service provider.  These training sessions were not

isolated, but rather were routine and continuous from the Spring of 2011 and into 2013.  The methods taught in Dahl's training sessions were brought to the attention of Schanz, who refused to react or take corrective action.  Schanz's own brand of training, which focused on encouraging AP sales reps to be aggressive, loud, and relentless toward the homeowner, served to assist in AP reps in acquiring sales through Dahl's deceptive sales approach.

**Schanz Forms the AP Companies**

48.     Beginning in March, 2013, Schanz formed a new set of companies to be used in pursuit of his alarm sale, installation and monitoring business, including the AP Defendants and other state specific AP companies.

49.     On information and belief, Schanz conducted business with each of the newly formed AP companies like he did with the APT companies, creating the appearance that they were distinct companies but operating each as if they are all one company.  This was part of his effort to undermine efforts to impose responsibility for the continuing course of Defendants' deceptive sales practices.

50.     On information and belief, all of the newly-formed AP companies are alter egos of each other, including the AP Defendants, they are directed and controlled by Schanz, and they continue to pursue the same fraudulent sales practices as did APT.

51.     On information and belief, Adam Schanz and Alarm Protection announced a "rebranding" of AP to "Alder Home Protection" in late February, early March 2015.  According to the company's recruiting website Join.Alder.com, Alder sales representatives will sell home security systems in the 2015 summer sales season in Huntsville, AL, Birmingham, AL, San Antonio, TX, Houston, TX, Jackson, MS, Nashville, TN, Dallas, TX, Anchorage, AK, Little Rock, AR, Louisville, KY, and Los Angeles, CA.

## AP's Target on Monitronics Customers

### Specific Instances of Deceptive Sales Practices Against Monitronics Customers in Texas

52.     Schanz and his AP sales representatives have targeted homeowners with existing alarm systems monitored by Monitronics and other industry competitors.  Monitronics first saw traces of fraudulent sales tactics in 2013, but did not discover AP's widespread campaign until 2014 when Monitronics received an influx of customer complaints specifically from the summer sales season of 2014.  It was apparent at this point that Schanz and his AP sales representatives had refined their tactics and focused their attention on Monitronics' customers.

### Olga Salazar – Plano, Texas

53.     On or about May 31, 2014, an AP sales representative named Jake Palmer visited the home of Monitronics customer Olga Salazar in Plano, Texas.  During that sales call, Jake Palmer falsely stated that Alarm Protection took over Monitronics.  According to Ms. Salazar, she felt "misled" and that AP "used deceptive tactics" to get her to agree to change service providers.

### Juanita Slusher – Mesquite, Texas

54.     On or about September 1, 2013, an AP sales representative named Andrew Han visited the home of Monitronics' customer Juanita Slusher in Mesquite, Texas. During that sales call, Andrew Han falsely stated that Monitronics had sold its accounts to Alarm Protection, and that the customer should not attempt to call Monitronics because they "weren't there anymore."

55.     Andrew Han did not hold an alarm sales person license in Texas when he approached Ms. Slusher, and does not hold an alarm sales person license in Texas as of the date of filing this Complaint.

56.     Han's sale of alarm monitoring equipment and/or services in Texas without a license is a violation of the Texas Occupation Code, §§ 1702.361, 381-383, 388, 401-402, and related

regulations enacted in the Texas Administration Code, Title 37, Part 1, Chapter 35.  Such violations present a wide array of potential civil and criminal sanctions.

57.     The use of a sales force lacking proper licensing was conduct that Schanz sanctioned and endorsed.  Schanz also encouraged numerous sales representatives to violate licensing laws and/or misrepresented the need for a license when selling alarm equipment and services.

### Carlos Cifuentes – Mesquite, Texas

58.     On or about January 17, 2014, an AP sales representative named Jake Palmer visited the home of Monitronics' customer Carlos Cifuentes in Mesquite, Texas.  During that sales call, Jake Palmer falsely stated that he was working for Monitronics and misled Mr. Cifuentes into believing that he was signing a new contract with Monitronics.

### Cynthia Sanders – Houston, Texas

59.     On or about August 4, 2014, an AP sales representative named Kiet Tran visited the home of Monitronics' customer Cynthia Sanders in Houston, Texas. During that sales call, Kiet Tran falsely stated that Monitronics had changed its name to Alarm Protection and that he was there to change out Ms. Sanders' equipment.  Kiet Tran also stated that this would be the "last time Monitronics would be changing their name." As a result of Kiet Tran's false statements, Ms. Sanders felt "lied to" and "tricked" into switching service providers.

### Robert Loftice – San Antonio, Texas

60.     On or about July 5, 2014, an AP sales representative named Coltt Valentine visited the home of Monitronics' customer Robert Loftice in San Antonio, Texas. During that sales call, Coltt Valentine falsely stated that Monitronics was going out of business.  Coltt Valentine did not hold an alarm sales person license in Texas at the time he approached Mr. Loftice.

### John Brever – Dallas, Texas

61.      On or about May 28, 2014, an AP sales representative named Trevor Speirs visited the home of Monitronics' customer John Brever in Dallas, Texas. During that sales call, Trevor Speirs falsely stated that AP had "bought out" Monitronics. Trevor Speirs did not hold and still does not have an alarm sales person license in Texas.

### Dorothy Kaiser – Dallas, Texas

62.      On or about July 25, 2014, an AP sales representative named Ben Wyman visited the home of Monitronics' customer Dorothy Kaiser in Dallas, Texas.  During that sales call, Ben Wyman falsely stated that Alarm Protection had "bought out" Monitronics and Ms. Kaiser's account and that he was there to "upgrade" her system.

### Clifford Barton – Dallas, Texas

63.      On or about July 16, 2014, an AP sales representative named Jake Palmer visited the home of Monitronics' customer Clifford Barton in Dallas, Texas.  During that sales call, Jake Palmer falsely stated that Monitronics was going out of business.

### Tatiana Garcia – Dallas, Texas

64.      On or about June 27, 2014, an AP sales representative visited the home of Monitronics' customer Tatiana Garcia in Dallas, Texas. During that sales call, the AP sales representative falsely stated that he was working with Monitronics to upgrade Ms. Garcia's system.

### Harry Wood – Richardson, Texas

65.      On or about August 12, 2014, an AP sales representative named Brandon visited the home of Monitronics' customer Harry Wood in Richardson, Texas.  During that sales call, Brandon falsely stated that Monitronics was "no longer local" and possibly going out of business.

### Sarah Smith – Fort Worth, Texas

66.     On or about September 4, 2014, an AP sales representative named Ben Hurtman visited the home of Monitronics' customer Sarah Smith in Fort Worth, Texas. During that sales call, Ben Hurtman falsely stated that Monitronics was going out of business and that AP had bought out her contract with Monitronics. Ben Hurtman did not hold an alarm sales person license in Texas when he approached Ms. Smith, and, to this day, holds no such license.

### Alice Rudd – Fort Worth, Texas

67.     On or about June 10, 2014, an AP sales representative visited the home of Monitronics' customer Alice Rudd in Fort Worth, Texas. During that sales call, the AP representative falsely stated that Monitronics was going out of business and closing down.

### Ruthie Hogan – Lancaster, Texas

68.     On or about February 20, 2014, an AP sales representative named William Gore visited the home of Monitronics' customer Ruthie Hogan in Lancaster, Texas. During that sales call, William Gore falsely stated that Monitronics went out of business, and forged Ms. Hogan's customer cancel letter to Monitronics without Ms. Hogan's knowledge or permission. William Gore did not hold an alarm sales person  license in Texas when he approached Ms. Hogan, and, to this day, holds no such license.

### Henry Van Slyke – Orange, Texas

69.     On or about June 11, 2014, an AP sales representative named Leimoni "Bubba" Maile visited the home of Monitronics' customer Henry Van Slyke in Orange, Texas. During that sales call, Bubba Maile falsely stated that Monitronics had lost its alarm monitoring license in Texas and that

Mr. Van Slyke's monitoring system was in jeopardy. Leimoni Maile did not hold an alarm sales person license in Texas when he approached Mr. Van Slyke.

### Betty Doss – San Antonio, Texas

70.      On or about July 2, 2014, an AP sales representative named Coltt Valentine visited the home of Monitronics' customer Betty Doss in San Antonio, Texas. During that sales call, Coltt Valentine falsely stated that Monitronics was going out of business. Coltt Valentine did not hold an alarm sales person license in Texas when he approached Ms. Doss.

### Davlyn Evans – Paris, Texas

71.      On or about August 2, 2014, an AP sales representative visited the home of Monitronics' customer Davlyn Evans in Paris, Texas. During that sales call, the AP representative falsely stated that Monitronics was going out of business.

### Lorraine Littlefield – San Antonio, Texas

72.      On or about July 1, 2014, an AP sales representative named Coltt Valentine visited the home of Monitronics' customer Lorraine Littlefield in San Antonio, Texas.  During that sales call, Coltt Valentine falsely stated that Monitronics was going out of business, that AP was "taking over," and that he was there to "upgrade" Ms. Littlefield's equipment.  Coltt Valentine did not hold an alarm sales person license in Texas when he approached Ms. Littlefield.

### Deceptive Sales Practices Against Monitronics Customers Outside Texas

73.      AP also has employed numerous, like deceptive sales practices against Monitronics outside of Texas.

### Earnest Quarles – Birmingham, Alabama

74.     On or about December 15, 2014, Dahl visited the home of Earnest Quarles in Birmingham, Alabama.  During the sales call, Dahl falsely stated that Monitronics had "gone out of business." Mr. Quarles was happy with Monitronics' services and felt that he had been "lied to" and "tricked" by Jacob Dahl into switching providers.

### Magalene Brazier – Childersberg, Alabama

75.     On or about April 29, 2014, Dahl visited the home of Monitronics' customer Magalene Brazier in Childersberg, Alabama. During that sales call, Dahl falsely stated that AP had "bought out" Monitronics. As a result of Dahl's false statements, Ms. Brazier felt "misled" and that AP used "deceptive tactics" to trick her into switching service providers.

### Hazel Riley – Sylacauga, Alabama

76.      On or about September 4, 2014, Dahl visited the home of Monitronics' customer Hazel Riley in Sylacauga, Alabama. During that sales call, Dahl falsely stated that AP had "bought out" Monitronics, that Dahl was there to check Ms. Riley's system, and that her system was "out of date." As a result of Dahl's false statements, Ms. Riley felt "lied to" and "tricked" into switching service providers.

### Dorothy Rhoden – Childersberg, Alabama

77.     On or about April 1, 2014, Dahl visited the home of Monitronics' customer Dorothy Rhoden in Childersberg, Alabama. During that sales call, Dahl falsely stated that AP had "bought out" Monitronics.

### Lois Foyes – Maylene, Alabama

78.     On or about May 6, 2014, Dahl visited the home of Monitronics' customer Lois Foyes in Maylene, Alabama. During that sales call, Dahl falsely stated that AP had "bought out" Monitronics.

### Viola Evans – Anninston, Alabama

79.     On or about March 26, 2014, Dahl visited the home of Monitronics' customer Viola Evans in Anniston, Alabama. During that sales call, Dahl falsely told the customer that Monitronics was out of business.

**Clyde Ashe – Childersberg, Alabama**

80.     On or about September 9, 2014, a sales representative from AP visited the home of Monitronics' customer Clyde Ashe in Childersberg, Alabama. During that sales call, the AP sales representative falsely stated that Monitronics was going out of business and that AP was taking over Mr. Ashe's contract.

**Ronald Kirby – Delta Junction, Alaska**

81.     On or about July 14, 2014, an AP sales representative named Thomas Craig visited Monitronics' customer Ronald Kirby in Delta Junction, Alaska. During that sales call, Thomas Craig falsely stated that AP had taken over service for Monitronics, and that Monitronics was unable to maintain or service Mr. Kirby's alarm system, or other alarm systems in Alaska.  As a result of Thomas Craig's false statements, Mr. Kirby felt "misled" and that AP "used deceptive tactics" to get him to agree to change service providers.

**Linda Lundquist – Kenai, Alaska**

82.     On or about May 12, 2014, an AP sales representative visited the home of Monitronics' customer Linda Lundquist in Kenai, Alaska. During that sales call, the AP sales representative falsely stated that AP had purchased Monitronics' clientele in Alaska, and that there was an agreement between Monitronics and AP whereby Monitronics would reimburse its customers for double billing from both Monitronics and AP.

**Kathleen Von Forester – Sterling, Alaska**

83.     On or about May 9, 2014, an AP sales representative named Terrance Jesclard visited the home of Monitronics' customer Katheleen Von Forester in Sterling, Alaska. During that sales call, Terrance Jesclard falsely stated that AP had taken over Monitronics.

### Steven Webb – Kasilof, Alaska

84.     On or about May 11, 2014, an AP sales representative named Ben Wyman visited the home of Monitronics' customer Steven Webb in Kasilof, Alaska. During that sales call, Ben Wyman falsely stated that AP had taken over Monitronics and Ben Wyman forged Mr. Webb's customer cancel letter to Monitronics without Mr. Webb's knowledge or permission.

### Vanita Thurmond – Anchor Point, Alaska

85.     On or about June 23, 2014, an AP sales representative visited the home of Monitronics' customer Vanita Thurmond in Anchor Point, Alaska. During that sales call, the AP representative falsely stated that Monitronics was going out of business.

### Salaahuddin Ismael – Long Beach, California

86.     On or about April 12, 2013, a sales representative from Alarm Protection visited the home of Monitronics' customer Salaahuddin Ismael in Long Beach, California. During that sales call, the AP sales representative falsely stated that he was working for Monitronics.

### Roger Kerwin – Riverside, California

87.     On or about July 20, 2013, a sales representative from AP named Ben Hurtmann visited the home of Monitronics' customer Roger Kerwin in Riverside, California. During that sales call, Ben Hurrtman falsely stated that Monitronics was out of business.  Ben Hurtman was not licensed in California to sell alarm systems and services for AP.

### Joseph Mahabir – Buena Park, California

88.     On or about August 9, 2013, a sales representative from AP visited the home of Monitronics'

customer Joseph Mahabir in Buena Park, California. During that sales call, the AP sales

representative falsely stated that Monitronics went out of business.

### Bill Meggenburg – Meade, Kansas

89.     On or about April 9, 2014, a sales representative from AP visited the home of Monitronics'

customer Bill Meggenburg in Meade, Kansas. During that sales call, the AP sales representative

falsely stated that Monitronics was going out of business and that Mr. Meggenburg's alarm system

was not being monitored.  As a result of the AP representative's false statements, Mr. Meggenrburg

felt "misled" and that AP "used deceptive tactics" to get him to agree to change service providers.

### Billy Tubertini – Greenville, Mississippi

90.     On or about April 8, 2014, an AP sales representative named Garrett Martin visited the home

of Monitronics' customer Billy Tubertini in Greenville, Mississippi. During that sales call, Garrett

Martin pretended to be with Monitronics and falsely stated that he needed to upgrade Mr. Tubertini's

alarm system.

### Delores Stewart – Memphis, Tennessee

91.     On or about August 7, 2014, an AP sales representative named Nick Parker visited the home

of Monitronics' customer Deloris Stewart in Memphis, Tennessee. During that sales call, Nick

Parker falsely stated that AP was taking over Ms. Stewart's "old" security system, and that AP was

taking over all of Security Network's "old" contracts (Security Networks is now and was then a

wholly owned subsidiary of Monitronics), and its alarm monitoring contracts had been assigned to

Monitronics.  As a result of Nick Parker's false statements, Ms. Stewart felt "misled" and that AP

"used deceptive tactics" to get her to agree to change service providers.  Nick Parker was not

licensed in Tennessee to sell alarm systems and services for AP.

**AP has Induced Payment Breach by Dozens of Monitronics Customers**

92.     In addition to losing dozens of contracts in Texas and elsewhere through use of false and deceptive sales practices as described above, AP also has induced hundreds of customers to stop paying on their alarm monitoring agreements while in term.  To this day, many of those agreements remain in payment breach.

## CLAIMS

## CLAIM I- UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125 (a)(1)(A, B)

93.     Plaintiff incorporates Paragraphs 1 through 92, as if set forth fully here.

94.     Defendants, each in concert and conspiracy with each other and others, are liable for the acts of AP sales representatives in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A, B). Defendants are also liable for such acts based upon their direct participation in the deceptive practices and as alter egos of each other.  Additionally, Defendants are vicariously liable for such violations based upon the acts of their employees taken while in the course of their employment and their agents acting with express, implied or apparent authority, or as later ratified.

95.     Defendants, by and through AP sales representatives, have marketed goods and services by making false and deceptive representations to Monitronics' customers in Texas and elsewhere. Defendants have caused actual confusion to Monitronics' customers by making deceptive, false statements regarding AP's alleged affiliation and connection with Monitronics.  Defendants also have misrepresented the nature and characteristics of their goods and services in commercial advertising and promotion, including, but not limited to, the door-to-door home sales solicitations. These wrongful actions of Defendants place Monitronics within the zone of interest protected by the Lanham Act, 11. U.S.C. § 1125(a)(1)(A, B).

96.     Such false and misleading representations include, but are not limited to:

a.  Monitronics was going, or had gone, out of business;

b.  Monitronics security systems were or are outdated and incapable of protecting Monitronics' customers from burglaries without "upgrades;"

c.  Monitronics was or is unable to service or perform maintenance on alarm security systems;

d.  Monitronics was bought out by AP or had merged with AP;

e.  AP is affiliated with or a division of Monitronics;

f.   Monitronics is changing or had changed its name to AP;

g.  AP was doing upgrades for Monitronics;

h.  The representative was there on behalf of Monitronics and/or worked for Monitronics;

i.  Monitronics lost its monitoring license and its customer accounts were at risk; and

j.  Offering "free upgrades" to Monitronics security systems without disclosing that they are competitors of Monitronics seeking to replace Monitronics' services and that the upgrades are only free if a new 5 year contract is signed with a new service provider.

97.  These statements are literally false.

98.  The false and misleading representations were employed while engaged in commerce, including but not limited to, door-to-door home sales promotions.

99.  Each of the false statements were made with the intent of deceiving Monitronics' customers as to the relationship, affiliation, or connection of AP with Monitronics, and as to nature and characteristics of Monitronics' goods and services.

100.    These false and misleading statements have created actual confusion among consumers, and will continue to do so if permitted to continue.

101.    Defendants Schanz and Dahl controlled, directed, and/or actively participated in these false and deceptive sales practices, acting at all times in active concert and conspiracy with the AP Defendants and others in their efforts to confuse Monitronics customers.

102.    Monitronics has been and will continue to be damaged as a result of Defendants' false statements and commercial advertising, by the confusion created in the market regarding Monitronics' services, by the disruption of Monitronics' relationship with its customers, by the diversion of Monitronics' customers to Defendants, by loss of confidential information relating to Monitronics' customers, and by damage to Monitronics' goodwill and reputation as a reliable provider of alarm monitoring security services.   Such damage was proximately caused by Defendants violation of 15 U.S.C. § 1125(a)(1)(A, B).

103.    Monitronics is entitled to and seeks an injunction pursuant to 15 U.S.C. § 1116(a) barring Defendants from further violations of 15 U.S.C. § 1125(a)(1)(A, B).  Given Defendants' disregard of its sales agents' continuing deceptive trade practices, Schanz and Dahl's ongoing involvement in the training of how to implement deceptive sales practices, and the apparent pervasive use by the other sales agents of abusive sales tactics similar to Dahl's teachings and his own sales practices, Defendants are likely to continue to engage in such practices unless they are enjoined by this Court from further violations.

104.    Monitronics is entitled to an award of trebled compensatory damages, including lost profits and/or Defendants' revenues and/or profits, and attorney fees and the costs of this action pursuant to 15 U.S.C. §1117(a).   Monitronics also seeks and is entitled to receive an accounting from

Defendants related to the profits earned from those accounts taken from Monitronics by reason of Defendants' acts in violation of the Lanham Act.

105.    More particularly, Monitronics respectfully requests the Court to enter judgment in its favor and against Defendants, jointly and severally, and award the following relief:

    (1)    An order pursuant to 15 U.S.C. § 1116(a) preliminarily, and permanently thereafter, restraining and enjoining Defendants, and their agents, servants, independent contractors, subsidiaries, affiliates, employees, officers, attorneys, successors and assigns, from - -

        a.    Making any false or misleading statement, or making any statement or engage in any conduct that is likely to or is intended to confuse Monitronics' customers or potential customers regarding or to the effect that - -

            i.    Monitronics is going out of business;

            ii.    The company which originally sold the alarm services to the customer is no longer in business or no longer associated with Monitronics;

            iii.    The AP Defendants or any affiliate of the AP Defendants are acquiring, merging with, has taken over or is part of Monitronics;

            iv.    Monitronics has merged with or has been acquired by any other company;

            v.    The AP Defendants, their affiliates, or any other entity whatsoever, is taking over the monitoring of Monitronics' accounts, has purchased the customer's account from Monitronics, is a "sister company" of Monitronics, or is an affiliate of Monitronics;

vi.     The AP Defendants, their affiliates or any of their respective agents, representatives, servants, employees, assigns and any other person acting in concert, combination or conspiracy with them are "with Monitronics" or "a part of Monitronics";

vii.    Monitronics is changing its name;

viii.   Monitronics does not or no longer exists; and

ix.     Monitronics is not, or has stopped, monitoring the alarm system for that person, residence or business, or that Monitronics will no longer be able to monitor the alarm system, for any reason, for that person, residence or business.

b.   The AP Defendants impersonating a Monitronics customer when contacting Monitronics;

c.   Proposing during a solicitation or sale relating to an existing alarm system or alarm monitoring service being monitored by Monitronics that they are offering an "update" or "upgrade" without fully disclosing to the customer that any such proposal (1) actually requires an agreement with a person or entity different than Monitronics, and/or (2) could result in a change from Monitronics as the alarm monitoring service provider;

d.   Proposing to change service providers for an alarm system that Monitronics is servicing without first fully disclosing that Monitronics will continue to provide monitoring services to their residence even if they switch to Alarm Protection unless the Monitronics service is properly cancelled and all related contractual obligations fully satisfied;

e.      Proposing to change service providers for an alarm system that Monitronics is servicing without first fully disclosing and making absolutely and unequivocally clear, within the first 30 seconds of any discussion with a prospective customer, that they represent a company other than their existing provider and that they have come to sell new or upgraded equipment in exchange for the customer's signing of a new 5 year contract;

f.      Making or encouraging others to make false or misleading statement(s) regarding the function, performance, capabilities, specifications, features, requirements, reliability or design of any Monitronics equipment, alarm system or service;

g.      Engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Monitronics or Monitronics registered trademarks, trade names, service marks or logos;

h.      Training, inducing or encouraging their agents, representatives, servants, employees, or assigns and any other person acting in concert, combination or conspiracy with them to participate or perform any of the acts or behavior prohibited by any of the foregoing;

(2)      An accounting of Defendants' profits resulting from their deceptive sales practices, and payment of such profits to Monitronics;

(3)      Compensatory damages, as alleged above, including direct and consequential damages, including Monitronics' lost profits, and/or Defendants sales revenues or

profits, trebled, as provided by 15 U.S.C. §1117(a), in an amount to be established at trial;

(4)     Attorney fees and costs incurred in the prosecution of this action, as provided by 15 U.S.C. § 1117(a) and/or as otherwise authorized by law; and

(5)     Such other and further relief as the Court may deem appropriate in the circumstances, including pre-judgment and post-judgment interest.

## CLAIM II- TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS

106.    Plaintiff incorporates Paragraphs 1 through 105, as if set forth fully here.

107.    Defendants, each in concert and conspiracy with each other and others, are liable for acts constituting tortious interference with contract and business relationships.  Defendants are also liable for such interference as direct participants in the wrongful acts and as alter egos of each other. Additionally, Defendants are vicariously liable for such acts of interference based upon the conduct of their employees taken while in the course of their employment or their agents acting with express, implied, or apparent authority, or as later ratified.

108.    A valid contract existed between Monitronics and each of the Monitronics customers whom Defendants unlawfully solicited.

109.    Defendants were aware of these contracts.

110.    Defendants intentionally and knowingly procured the breach of these contracts and interfered with reasonably anticipated continuing relationships with Monitronics' customers.

111.    Defendants' encroachment upon Monitronics' customer contracts and customer relationships was accomplished through fraud and deception, and without justification or legal privilege.

112.    Defendants knowingly and notoriously interfered with Monitronics customer contracts and customer relationships in violation of law, including use of sales representatives lacking required licenses.

113.    Defendants' intentional encroachment upon Monitronics' contracts proximately caused Monitronics harm, entitling Monitronics to recover compensatory damages including direct and consequential damages as well as lost profits.

114.    Defendants' tortious acts were done intentionally, willfully and with actual malice and in bad faith, so as to justify the assessment of exemplary and punitive damages, against Defendants in an amount to be determined at the time of trial.

115.    Monitronics respectfully requests that the Court enter judgment in its favor and against Defendants, jointly and severally, and award the following relief:

     a.    Compensatory damages as described above in an amount to be established at trial;

     b.    Punitive damages in a sum sufficient to deter Defendants from engaging in further deceptive sales tactics;

     c.    Preliminary and permanent injunctive relief as requested in Claim I; and

     d.    Such other and further relief as the Court may deem appropriate under the circumstances, including pre-judgment and post judgment interest.

## CLAIM III- BUSINESS DISPARAGEMENT

116.    Plaintiff incorporates Paragraphs 1 through 115, as if set forth fully here.

117.    Defendants, each in concert and conspiracy with each other and others, are liable for acts constituting business disparagement.  Defendants are also liable for such acts of business disparagement as direct participants in the wrongful conduct or as alter egos of each other. Additionally, Defendants are vicariously liable for such acts of business disparagement based upon

the acts of their employees taken while in the course of their employment or their agents acting with express, implied or apparent authority or as later ratified.

118.    Defendants have intentionally made false and misleading statements about Monitronics and Monitronics' equipment and services, including, but not limited to:

      a.    Monitronics was going, or had gone, out of business;

      b.    Monitronics security systems were or are outdated and incapable of protecting Monitronics' customers from burglaries without "upgrades;"

      c.    Monitronics was or is unable to service or perform maintenance on alarm security systems;

      d.    Monitronics was bought out by AP or had merged with AP;

      e.    AP is affiliated with or a division of Monitronics;

      f.     Monitronics is changing or had changed its name to AP;

      g.    AP was doing upgrades for Monitronics;

      h.    The representative was there on behalf of Monitronics and/or worked for Monitronics; and

      i.    Offering "free upgrades" to Monitronics security systems without disclosing that they are competitors of Monitronics seeking to replace Monitronics' services and that the upgrades are only free if a new 5 year contract is signed with a new service provider.

119.    At the time the statements were made, Defendants knew the statements were false, misleading, and/or deceptive, they made the statements without privilege, and made the statements with actual malice.

120.    The statements are injurious and damage Monitronics in its industry and marketplace.

121.     Defendants' false and deceptive sales tactics demean the quality of Monitronics' goods and services.

122.     These tactics have proximately caused and will proximately continue to cause Monitronics to lose sales and goodwill, and to suffer damages.

123.     Defendants' acts of business disparagement have caused Monitronics to suffer actual, direct, and consequential damages, including lost profits.  Monitronics seeks to recover judgment against Defendants, jointly and severally, for all such damages which have resulted from such unlawful activity.

124.     Defendants' tortious acts were done intentionally, willfully and with actual malice, thereby entitling Monitronics to the recovery of punitive damages.

125.     Monitronics respectfully requests that the Court enter judgment in its favor and against Defendants, jointly and severally, and award the following relief:

a.       Compensatory damages as described above in an amount to be established at trial;

b.       Punitive damages in a sum sufficient to deter Defendants from engaging in further acts of business disparagement;

c.       Preliminary and permanent injunctive relief as requested in Claims I and II; and

d.       Such other and further relief as the Court may deem appropriate in the circumstances, including pre-judgment and post judgment interest.

**Vicarious Liability – Agency and Alter Ego**

126.     Plaintiff incorporates Paragraphs 1 through 125, as if set forth fully here.

127.     AP Texas, Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Kansas, Kentucky, Mississippi, Oklahoma, Tennessee and Utah (collectively, the "AP State Specific Entities") are merely agents through which parent or affiliated companies conduct business in

various states, including AP USA, AP Management, AP, LLC, and/or Rhodesian (collectively, the "AP Parent Entities").  The separate corporate status between the AP State Specific Entities and the AP Parent Entities is in form only with no semblance of individual identity between those companies.  The AP Parent Entities control the activities of the AP State Specific Entities.

128.    The AP State Specific Entities retain no meaningful control over its business activities.  More particularly, the AP State Specific Entities have no salaried employees; their non sales functions are performed by the AP Parent Entities and/or Schanz, including advertising, internet marketing, sales oversight, accounting and bookkeeping and various administrative services, including receipt of customer payments, payment of sales agents, customer service and welcome calls; their funds are paid into and out of bank accounts owned or controlled by the AP Parent Entities and/or Schanz; they exist only to sell through use of deceptive sales practices; their formal separate existence is designed to avoid responsibility for their sales staff; and they are undercapitalized and exist as mere shells without any substantive, separate existence.  In sum, the AP State Specific Entities are used as a device to insulate Schanz from liability for abusive sales tactics.

129.    The AP Parent Entities and Schanz have vicarious liability for the acts of the AP State Specific Entities either based upon principles of agency law and alter ego, or other like theories for piercing the corporate veil.

**Individual Liability**

130.    Plaintiff incorporates Paragraphs 1 through 129, as if set forth here.

131.    Schanz is the active force behind the creation, organization, and operation of the AP Defendants.  Schanz is the owner, controller, and/or manager of the AP Defendants and he is the sales and marketing head for those entities.  Schanz also actively trains sales representatives in the states where AP is actively selling in a manner intended to improve the effectiveness of Defendants'

deceptive sales practices, and he monitors the activities of the Defendants in various states from his offices in Utah.  Dahl is the regional sales manager and/or partner for all or some of the AP State Specific Entities, and he has trained a substantial number of AP's partners, managers and sales staff in the art of deceptive sales practices in alarm system home solicitations.

132.    The corporate shield doctrine does not insulate Schanz and/or Dahl from either jurisdictional reach from Texas or individual liability, because both Schanz and Dahl have directly, intentionally and knowingly participated in the commission of intentional torts.

### PRAYER FOR RELIEF

133.    Plaintiff seeks the relief requested in Claims I – III above.

### JURY DEMAND

134.    Monitronics has demanded a jury trial of all issues triable to a jury.

Respectfully submitted,

CULP & DYER, L.L.P.
222 E. McKinney Street, Suite 210
Denton, Texas 76201
Telephone:  (940) 484-2236
Telecopier:  (940) 484-4436


By:      /s/  Marc S. Culp_____
         Marc S. Culp
         State Bar No. 05212700
         mculp@cdhllp.com
         Benjamen S. Dyer
         State Bar No. 00795332
         bdyer@cdhllp.com
         Amanda B. Montgomery
         State Bar No. 24065779
         amontgomery@cdhllp.com

ATTORNEYS FOR PLAINTIFF,
MONITRONICS INTERNATIONAL, INC.

### <u>CERTIFICATE OF SERVICE</u>

On this date, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the ECF system. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by FED. R. CIV. P. 5 (b)(2).

By: <u>/s/   Marc S. Culp                              </u>
Marc S. Culp